873 F.2d 820
 Janice FRAZIER, Plaintiff-Appellee Cross-Appellant,
v.
John T. KING, etc., et al., Defendants,
Charles Davoli, Linda Mills and Donald Guillory,
Defendants-Appellants Cross-Appellees.
Janice FRAZIER, Plaintiff,
Paul Henry Kidd, Plaintiff-Appellee,
v.
John T. KING, etc., et al., Defendants,
Charles Davoli, Linda Mills, and Donald Guillory,
Defendants-Appellants.
 Nos. 87-4903, 88-4164.
 United States Court of Appeals,
Fifth Circuit.
 May 30, 1989.
Rehearing and Rehearing En Banc Denied June 29, 1989.
 
 Joseph E. Kopsa, William J. Guste, Jr., Atty. Gen., Houston T. Penn, Asst. Atty. Gen., Baton Rouge, La., for appellants.
 Paul Henry Kidd, Monroe, La., Rebecca L. Hudsmith, New Orleans, La., for appellees.
 Appeals from the United States District Court for the Western District of Louisiana.
 Before THORNBERRY, KING and JONES, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 Frazier, plaintiff-appellee, brought suit against numerous Louisiana state officials, defendants-appellants, (1) under 42 U.S.C. Sec. 1983 for violations of her rights under the First and Fourteenth Amendments; and (2) under state law for claims of retaliatory discharge and intentional infliction of emotional, physical and mental injuries. The district court held that (1) a previous finding by the Louisiana Civil Service Commission (LCSC) that the defendants had violated Frazier's First Amendment rights precluded relitigation of this issue; (2) the defendants were not entitled to qualified immunity; (3) Frazier was entitled to lost wages, attorney's fees, and compensatory and punitive damages for intentional infliction of emotional, physical and mental injuries; and (4) Frazier could not sustain a claim for retaliatory discharge. On appeal, the defendants urge that (1) they are entitled to Eleventh Amendment immunity and qualified immunity; (2) the prior LCSC adjudication precludes Frazier's Sec. 1983 claim and, alternatively, if the LCSC decision does not preclude Frazier's Sec. 1983 claim, the defendants are not precluded from relitigating the issue of their liability; (3) they were denied due process to contest liability; (4) Frazier is not entitled to lost wages; (5) the court erred in awarding compensatory and punitive damages; and (6) the attorney's fee award was improper.
 
 
 2
 I. Facts.
 
 
 3
 In May 1981, Frazier was hired by the Wade Correctional Center (Wade) as a registered nurse working in the infirmary. Soon after she began working at Wade, Frazier reported violations of nursing practices in the infirmary to her supervisor Mills. Frazier revealed that inmates were being denied medical care, and that nurses were changing doctors' orders, completing prescription forms, and making medical diagnoses. Mills failed to address the problems Frazier brought to her attention.
 
 
 4
 Frazier then discussed the problems at the infirmary with Assistant Warden Henderson and Warden Guillory. The Warden did not investigate any of the improprieties Frazier had alleged. Henderson did attempt to investigate Frazier's claims, but the Warden instructed him not to investigate and threatened to have him transferred out of Wade. Apparently in response to Frazier's report to Henderson and Guillory, Mills reprimanded Frazier and threatened that Frazier might lose her job.
 
 
 5
 In the summer of 1982, Frazier spoke with Nurse Ibert, an administrator with the Department of Corrections, about the nursing practices at Wade. Frazier provided Ibert with documentation of her allegations. Ibert and another administrator then wrote two reports based on an investigation they conducted at Wade. These reports revealed that Frazier's criticisms were well-founded.
 
 
 6
 Despite Frazier's attempts to have the violations at Wade remedied, they continued to occur and Mills continued to threaten Frazier. In December 1982, Frazier again spoke with the Warden. She told him that she would report the violations to the media and the State Board of Nursing if they were not corrected. The Warden said that if Frazier went to the media or the State Board of Nursing, he would fire her.
 
 
 7
 Frazier then contacted former Secretary of the Louisiana Department of Corrections King and a nursing consultant with the Louisiana State Board of Nursing, Sister Lucie, outlining the violations at Wade. Frazier copied inmate records which she gave to Sister Lucie. Frazier obtained the inmates' consent before forwarding their records to Sister Lucie; however, Frazier later sent Sister Lucie additional records for which she did not obtain consent.
 
 
 8
 In January 1983, the State Board of Nursing charged Mills with violations of the Louisiana Nursing Practices Act. Mills entered into a consent agreement in May of 1983.
 
 
 9
 In the meantime, the Warden called Frazier into his office and accused her of making malicious, derogatory and slanderous statements. He demanded that Frazier turn over a tape recording of a conversation in which Ibert told Frazier that Mills was going to be fired because of her professional improprieties. Frazier refused to turn over the tape. The Warden threatened to send a guard to Frazier's home to retrieve the tape. Eventually, Frazier gave the Warden the tape under the condition that Ibert would not be fired.
 
 
 10
 The Warden continuously demanded that Frazier recant her allegations and write a formal apology. Frazier refused. Throughout this period, the Warden and Mills were trying to find some grounds to fire Frazier.
 
 
 11
 In February and April 1983, a Department of Corrections administrator, Davoli, investigated the infirmary at Wade for violations of the Nursing Practices Act. At the end of the investigation, Davoli filed a disciplinary report against Frazier, charging that she had made malicious statements about Department of Corrections' personnel and about illegal practices at Wade. The report further stated that Frazier had violated Department of Corrections' rules when she copied confidential inmate records without the inmates' consent. The report ended with a recommendation that Frazier be terminated. Frazier was then fired.
 
 
 12
 Frazier appealed her termination to the LCSC, which found that the defendants' decision to fire her was a violation of Frazier's rights "to speak out about the nursing practices at Wade." The LCSC then ordered the defendants to reinstate Frazier with back pay and to expunge all references to her termination from her personnel folder.
 
 
 13
 In August 1984, Frazier brought the instant suit against the defendants alleging (1) a 42 U.S.C. Sec. 1983 claim based on violations of her rights under the First and Fourteenth Amendments, and (2) state law claims for retaliatory discharge and intentional infliction of physical, emotional and mental injuries.
 
 
 14
 II. Preclusion.
 
 
 15
 As discussed above, Frazier appealed her termination to the LCSC, alleging that the decision to fire her was discriminatory, retaliatory and in violation of her due process and First Amendment rights. After two days of hearings, the LCSC found that
 
 
 16
 [t]he public interest in having free and unhindered debate on matters of public importance is the core value of the Free Speech Clause of the First Amendments of the United States and Louisiana Constitutions. Equally as important is the right of the employee to engage in such speech without the threat of retaliatory dismissal by their [sic] employer....
 
 
 17
 [T]he referee concludes that appellant's constitutional right to speak out about the nursing practices at Wade and to supply the nursing board with copies of inmate medical records is [not][1] significantly outweighed by the Department of Corrections' need to maintain discipline among its employees.
 
 
 18
 The LCSC then ordered the defendants to reinstate Frazier with back pay and awarded Frazier attorney's fees.
 
 
 19
 A central question in this appeal is the claim and issue preclusive effect of the LCSC decision. We must decide whether the LCSC decision precludes Frazier's Sec. 1983 claim. Then, we must determine whether the LCSC finding that the defendants violated Frazier's First Amendment rights precludes relitigation of this issue. We note at the outset that the district court erred in its preclusion analysis. The district court reviewed the issue preclusive effect of the LCSC's determination that the defendants violated Frazier's rights under rules of claim preclusion.
 
 
 20
 A. Claim Preclusion.
 
 
 21
 In reviewing the defendants' argument that the doctrine of claim preclusion prohibits Frazier from bringing this suit, two issues arise: first, whether state, federal or both state and federal claim preclusion rules apply; and second, whether Frazier is barred from bringing this claim under the relevant rules of claim preclusion.
 
 
 22
 In University of Tennessee v. Elliott, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the Supreme Court held that federal common law rules of preclusion incorporate state issue preclusion rules in a federal suit brought after a state administrative adjudication arising from the same facts. The Supreme Court has not established which forums' rules of claim preclusion apply to federal suits brought after state agency adjudications. In fact, since Elliott, only one circuit has addressed this issue. In Gjellum v. City of Birmingham, 829 F.2d 1056 (11th Cir.1987), the Eleventh Circuit held that federal claim preclusion rules apply when determining whether a state administrative decision precludes a subsequent Sec. 1983 claim.
 
 
 23
 We need not, at this time, decide whether state or federal rules of claim preclusion apply in this situation because, after analyzing the claim preclusive effect of the LCSC decision under both state and federal rules, we find that neither forums' claim preclusion rules bar Frazier's Sec. 1983 claim.
 
 
 24
 1. Federal Rules of Claim Preclusion.
 
 
 25
 In Patsy v. Florida International University, 634 F.2d 900, 910 (5th Cir.1981) (en banc), rev'd on other grounds, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), we held that "[u]nlike judicial actions, state administrative proceedings carry no res judicata or collateral estoppel baggage into federal court. Resorting to appropriate and adequate state administrative remedies in no way precludes federal court protection of federal constitutional and statutory rights." Although Elliott has overruled the Patsy holding regarding issue preclusion,[2] neither this court nor the Supreme Court has held that success in an administrative proceeding precludes a Sec. 1983 claim in federal court. In fact, the Eleventh Circuit has held that claim preclusion does not apply in this context. See Gjellum, 829 F.2d at 1070 (relying on Patsy to hold that the plaintiff was not precluded from pursuing his Sec. 1983 claim even though he had prevailed in a prior administrative proceeding); Healy v. Town of Pembroke Park, 831 F.2d 989, 991-92 (11th Cir.1987) (holding that where a state commission lacked the authority to award compensatory damages, the commission's award of reinstatement with back pay did not preclude the plaintiffs from bringing a subsequent claim in federal court for compensatory damages under Sec. 1983). The Sixth Circuit allowed plaintiffs to pursue Sec. 1983 claims following administrative proceedings without even mentioning claim preclusion in Barnes v. McDowell, 848 F.2d 725, 732 (6th Cir.1988). Several other courts have held that unreviewed administrative decisions do not preclude subsequent claims under the Age Discrimination in Employment Act. See Duggan v. Board of Education of East Chicago Heights, 818 F.2d 1291 (7th Cir.1987); Rosenfield v. Department of the Army, 769 F.2d 237 (4th Cir.1985). Contra Stillians v. State of Iowa, 843 F.2d 276 (8th Cir.1987). Similarly, the Supreme Court has held that an arbitration award does not preclude a subsequent Sec. 1983 action. McDonald v. City of West Branch, 466 U.S. 284, 290-92, 104 S.Ct. 1799, 1803-04, 80 L.Ed.2d 302 (1984).
 
 
 26
 After reviewing the extensive case law on claim preclusion, we rely on the language in Patsy to hold that federal law does not preclude Frazier from pursuing her Sec. 1983 claim. This holding permits plaintiffs to pursue administrative remedies without jeopardizing their Sec. 1983 claims. This result is consistent with Sec. 1983's purpose of protecting federal rights. In addition, it has the practical effect of encouraging plaintiffs to seek administrative remedies before turning to the federal courts. A contrary result would encourage plaintiffs to bypass administrative proceedings in order to preserve their claims under Sec. 1983.
 
 
 27
 2. State Rules of Claim Preclusion.
 
 
 28
 The defendants must prove that the following conditions exist before the doctrine of res judicata will bar Frazier's claim: "The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality." La.Rev.Stat.Ann. Sec. 13:4231 (West Supp.1989). In the LCSC proceeding Frazier demanded reinstatement with back pay. In the instant suit, she seeks lost wages, compensatory and punitive damages, and attorney's fees. We have previously held that plaintiffs cannot escape Louisiana rules of res judicata by pleading separate and distinct relief in different lawsuits where both suits involve the same cause of action. Lewis v. East Feliciana Parish School Board, 820 F.2d 143 (5th Cir.1987); Hernandez v. City of Lafayette, 699 F.2d 734 (5th Cir.1983). Although the logic of Lewis and Hernandez is compelling where plaintiffs seek damages in federal court that they could have sought in state court, it is not relevant where the original forum does not have the power to award the damages sought in the second action. In the instant case, the LCSC did not have the power to award Frazier all the damages she now seeks in federal court. Unlike the plaintiffs in Lewis and Hernandez, Frazier has not engaged in artful pleading to create the illusion that the "things demanded" in her two actions differ. Rather, limitations on the power of the LCSC prohibited her from seeking complete damages in the LCSC proceeding. We, thus find that Louisiana rules of res judicata do not bar Frazier from bringing the instant suit. See Robertson v. Popeye's Famous Fried Chicken, 524 So.2d 97 (La.App. 4th Cir.), writ denied, 526 So.2d 802 (1988) (holding that plaintiff's demand for workers' compensation disability benefits differed from thing demanded in subsequent tort action).
 
 
 29
 B. Issue Preclusion.
 
 
 30
 In Elliott, 478 U.S. at 799, 106 S.Ct. at 3227, the Supreme Court held that state rules of issue preclusion apply in federal actions brought after unreviewed state administrative proceedings.
 
 
 31
 Louisiana rules of issue preclusion apply to this case. A review of Louisiana law reveals that Louisiana courts have not adopted the doctrine of collateral estoppel. B.E. Welch v. Crown Zellerbach Corp., 359 So.2d 154, 156-57 (La.1978). Thus, under Louisiana law, the LCSC determination that the defendants violated Frazier's First Amendment rights does not have issue preclusive effect.
 
 
 32
 III. Constitutional Violation.
 
 
 33
 Although the LCSC finding that the defendants violated Frazier's rights does not have issue preclusive effect, we need not remand the case for the district court to determine whether a violation did, in fact, occur. A review of the record indicates that the parties actually litigated and the district court ruled on this issue in the context of the defendants' claim of qualified immunity. The parties presented evidence and memoranda of law to the trial court and provided extensive briefing to this court on the precise elements of Frazier's claim that the defendants violated her constitutional rights. Because the parties litigated this issue and the district court ruled on it, albeit in the context of qualified immunity, we find that the issue was fully litigated and is now ripe for our review.
 
 
 34
 In order to establish a constitutional violation Frazier must first prove that her speech involved a matter of public concern. Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). Second, she must demonstrate that her interest in "commenting upon matters of public concern" is greater than the defendants' interest in "promoting the efficiency of the public services [they] perform." Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968). Third, she must show that her speech motivated the defendants' decision to fire her. Mt. Healthy City School District v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). If Frazier is able to prove these three elements, the burden shifts to the defendants to prove that they would have fired Frazier even if she had not exercised her right to free speech. Id.
 
 
 35
 A. Matter of public concern.
 
 
 36
 The defendants concede that "[t]he quality of nursing care given to any group of people, including inmates, is a matter of public concern." We agree. See Brawner v. City of Richardson, Texas, 855 F.2d 187, 192 (5th Cir.1988) (holding that a police officer's letter to local paper reporting improprieties at the police department addressed a matter of public concern).
 
 
 37
 B. Balancing Frazier's interest against the interests of the state.
 
 
 38
 The defendants hinge their claim of qualified immunity on the fact that the state's interest in confidentiality and the smooth functioning of the infirmary is greater than Frazier's interest in speaking out about the nursing practices at Wade. The defendants urge that Frazier violated rules of confidentiality and Wade's procedures when she gave Sister Lucie copies of inmates' records. In addition, the defendants assert that Frazier disrupted the infirmary by (1) copying inmate records when she should have been helping patients; (2) creating "an atmosphere of uncertainty among the other nurses;" and (3) failing to follow established grievance procedures.
 
 
 39
 In balancing the state's interest in confidentiality and a non-disruptive environment against Frazier's interest in reporting the nursing practices at Wade, we are guided by the Supreme Court's recent decision in Rankin v. McPherson, 483 U.S. 378, 388, 107 S.Ct. 2891, 2898-99, 97 L.Ed.2d 315 (1987), holding that the
 
 
 40
 statement[s] will not be considered in a vacuum; the manner, time and place of [Frazier's] expression are relevant, as is the context in which the dispute arose [citations omitted].... [P]ertinent considerations [are] whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impeded the performance of the speaker's duties or interferes with the regular operations of the enterprise [citations omitted].
 
 
 41
 The Rankin court stated that "[v]igilance is necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of employees' speech." Id. at 384, 107 S.Ct. at 2896.
 
 
 42
 The defendants concern about confidentiality is misguided. Their own witness testified that it would not be a breach of confidentiality to send copies of the records to the State Board of Nursing.
 
 
 43
 The defendants do have a legitimate concern about the disruption caused by Frazier's accusations. Although Frazier's "whistle blowing" obviously created tension and difficulties at Wade, when weighed against the exposure of unethical medical practices affecting hundreds of inmates, the disruption is a minimal interest. See Matherne v. Wilson, 851 F.2d 752, 761 (5th Cir.1988) (holding that the greater the public concern, the greater the disruption must be to give rise to qualified immunity, relying on Gonzalez v. Benavides, 774 F.2d 1295 (5th Cir.1985), cert. denied 475 U.S. 1140, 106 S.Ct. 1789, 90 L.Ed.2d 335 (1986)). As this court held in Porter v. Califano, 592 F.2d 770, 773-74 (5th Cir.1979), "it would be absurd to hold that the First Amendment generally authorizes corrupt officials to punish subordinates who blow the whistle simply because the speech somewhat disrupted the office."
 
 
 44
 C. Motivation behind defendants' decision to terminate Frazier.
 
 
 45
 Under Mt. Healthy, Frazier must demonstrate that the exercise of her First Amendment rights motivated the defendants' decision to fire her. Once she has shown such motivation, the defendants must prove that they would have fired Frazier even absent her expression.
 
 
 46
 The district court found that Frazier's speech motivated the defendants' decision to fire her. The Warden's warning that if Frazier filed a complaint with the State Board of Nursing she would lose her job is alone sufficient evidence to support this finding.
 
 
 47
 The only reason the defendants gave for terminating Frazier was that she copied some inmate records without the inmates' consent. A witness for the defendants testified that it was not a violation for Frazier to copy the inmates' records and submit the records to the State Board of Nursing without the inmates' consent. This testimony supports the district court's finding that the defendants failed to demonstrate that they would have fired Frazier even if she had not exercised her First Amendment rights.
 
 
 48
 We find that the district court was correct in holding that the defendants violated Frazier's right of free speech.
 
 
 49
 IV. Sovereign Immunity.
 
 
 50
 The defendants urge that the Eleventh Amendment grant of sovereign immunity shields them from liability and deprives this court of jurisdiction. The Eleventh Amendment prohibits a citizen from bringing a suit in federal court against his own state. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).
 
 
 51
 In Ex parte Young, the Supreme Court held that a state official cannot invoke the shield of sovereign immunity if the official has acted in violation of the Constitution. 209 U.S. 123, 159, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1909). Under Young, when a state officer acts unconstitutionally, he is acting outside his authority and is "stripped of his official or representative character." Id. at 160, 28 S.Ct. at 454. See also Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (recognizing the continued validity of Ex parte Young ).
 
 
 52
 Because Frazier sued the defendants in their official and individual capacities for violations of her constitutional rights, her claim falls within Ex parte Young and she can maintain an action against the defendants in their individual capacities under 42 U.S.C. Sec. 1983. See American Civil Liberties Union of Mississippi v. Finch, 638 F.2d 1336, 1340-41 (5th Cir.1981) (holding that the Eleventh Amendment does not bar claims for damages against state officials for violations of individuals' First Amendment rights).
 
 
 53
 V. Qualified Immunity.
 
 
 54
 The defendants are not entitled to qualified immunity if Frazier's First Amendment rights were " 'clearly established' at the time of [the defendants'] conduct so that a reasonable official would have understood that his conduct violated [Frazier's rights]." Brawner, 855 F.2d at 191.
 
 
 55
 The Supreme Court recently articulated what is meant by "a clearly established right." In Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), the Supreme Court stated that:
 
 
 56
 [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful [citations omitted]; but it is to say that in the light of preexisting law the unlawfulness must be apparent.
 
 
 57
 Applying Anderson to the instant case, the evidence indicates that the defendants violated Frazier's clearly established First Amendment rights. There has been extensive publicity over the past decade concerning the rights and protections afforded whistle blowers. A reasonable official would know that it would be a violation of Frazier's rights to fire her after she blew the whistle on the improprieties at the prison. See Brawner, 855 F.2d at 193 (stating that "a reasonably objective public official would have known that termination of an employee for his speech concerning misconduct by public officials would violate a clearly established constitutional right").
 
 
 58
 VI. Damages.
 
 
 59
 After reviewing the record and the district court's findings, we hold that the evidence fully supports the district court's award of damages and attorney's fees.
 
 
 60
 VII. Conclusion.
 
 
 61
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 62
 EDITH H. JONES, Circuit Judge, dissenting in part:
 
 
 63
 This is a difficult and novel case as to which differences of opinion may legitimately be held. With deference, I disagree with the majority's suggestion that a federal claim preclusion rule may apply to Mrs. Frazier's Sec. 1983 claim, and I am uncertain whether they have properly articulated Louisiana claim preclusion law. I therefore dissent in part.
 
 
 64
 The majority write that it is not necessary to "decide whether state or federal rules of claim preclusion apply in this [case] because ... we find that neither forums' claim preclusion rules bar Frazier's Sec. 1983 claim." I dissent from the suggestion that federal claim preclusion applies.[1] Although the Supreme Court has not directly spoken on the claim preclusion law that governs a Sec. 1983 suit brought after an unreviewed state agency adjudication, I believe that the majority's suggestion is fundamentally inconsistent with the trend of recent Supreme Court cases. I think it inescapable from these decisions that Sec. 1983 should not be governed by a federal claim preclusion rule and a state issue preclusion rule.
 
 
 65
 In United States v. Utah Constr. & Mining Co., 384 U.S. 394, 442, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966), the Supreme Court unanimously held that the findings of the federal Advisory Board of Contract Appeals were binding on the subsequent Court of Claims proceeding. The Court referred generally to principles of res judicata and did not distinguish between issue preclusion and claim preclusion. Although this was not a Sec. 1983 case, its holding was later applied by the Court in that context.
 
 
 66
 Interpreting the federal full faith and credit statute, 28 U.S.C. Sec. 1738, the Supreme Court held in Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) that the federal courts must apply state issue preclusion rules in Sec. 1983 suits as long as there was a full and fair opportunity to litigate the issues actually decided in the prior state-court proceeding. The Court rejected the argument that Sec. 1983 is a statutory exception to the full faith and credit statute. In other words, it rejected the argument that the federal rights at issue in Sec. 1983 suits require a federal rule of preclusion. Notwithstanding the importance of the federal rights, there was no intent to override the full faith and credit statute.
 
 
 67
 In Kremer v. Chemical Constr. Corp., 456 U.S. 461, 480-81, 102 S.Ct. 1883, 1896-97, 72 L.Ed.2d 262 (1982), the Supreme Court stated that: "It is well established that judicial affirmance of an administrative determination is entitled to preclusive effect.... There is no requirement that judicial review must proceed de novo if it is to be preclusive." Accord Holmes v. Jones, 738 F.2d 711, 713-14 (5th Cir.1984) (citing circuit precedent prior to Kremer ). The Court also stated that administrative proceedings will be given issue preclusive effect as long as they satisfy minimal procedural requirements of the due process clause. 102 S.Ct. at 1897-98. Thus, it is settled that we must apply state rules of issue preclusion to a state court's summary review of a state administrative adjudication as long as that administrative proceeding satisfies the due process clause.
 
 
 68
 In Migra v. Warren City School Dist. Bd. of Education, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), the Supreme Court reasoned that "[i]f Sec. 1983 created an exception to the general preclusive effect accorded to state-court judgments, such an exception would seem to require similar treatment of both issue preclusion and claim preclusion." Id. 104 S.Ct. at 897 (emphasis added). The Court stated that "a variety of concerns, including notions of comity, the need to prevent vexatious litigation, and a desire to conserve judicial resources" are more important "than to ensure separate forums for federal and state claims." 104 S.Ct. at 898. The Court noted that the plaintiff in Migra, like Frazier, was "in an offensive posture in her state-court proceeding, and could have proceeded first in federal court had she wanted to litigate her federal claim in a federal forum." Id. at n. 7.
 
 
 69
 Finally, in University of Tennessee v. Elliott, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the Supreme Court stated that the full faith and credit statute "informed" their decision on a federal rule of issue preclusion regarding unreviewed state administrative findings. Relying on Utah Construction, the Court held "that when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts." 106 S.Ct. at 3227 (citation omitted). The Court pointed out that the interests identified in Utah Construction and Allen v. McCurry were "equally implicated whether fact finding is done by a federal or state agency." The Court listed some of these interests served: avoiding the cost and vexation of repetitive litigation; the public's interest in conserving judicial resources; and federalism (noting that "the Full Faith and Credit Clause compels the States to give preclusive effect to the administrative tribunal of a sister State"). Id. at 3226.
 
 
 70
 If the majority are correct that a federal rule of claim preclusion governs Mrs. Frazier's successive administrative and Sec. 1983 actions, while a state rule of issue preclusion applies as a result of Elliott, we have a most ungainly result. The majority suggest that applying state claim preclusion rules could thwart the aim of Sec. 1983 to provide full compensation for violations of civil rights. We do not know this, however, without knowing applicable state claim preclusion rules. Here, for instance, the majority conclude (although they may err) that Louisiana's law would not prevent Mrs. Frazier from pursuing her Sec. 1983 damage suit after a successful administrative proceeding. I believe the general common law of preclusion would so hold on grounds that the administrative agency lacked jurisdiction to award compensatory damages. In any event, an administrative proceeding may often prove more advantageous than a damage remedy because it authorizes equitable relief such as reinstatement and is more promptly determined. Extrapolating the Supreme Court's approach to an issue based on its previous decisions is always chancy, but here, I believe, we have more than the usual indication of a trend toward adoption of state law claim preclusion rules in Sec. 1983 actions.
 
 
 71
 I have some additional doubts about the majority's discussion of Louisiana preclusion law. See La.Rev.Stat.Ann. art. 13:4231 (West Supp.1987). The majority hold that claim preclusion does not apply because the LCSC had no authority to grant the relief Mrs. Frazier was awarded here. That proposition may be true, but it is not established by the case they cite, Robertson v. Popeye's Famous Fried Chicken, 524 So.2d 97 (La.App. 4th Cir.), writ denied, 526 So.2d 802 (La.1988). Robertson held that Louisiana res judicata does not bar a plaintiff who recovered workmen's compensation from his employer from suing a third-party tortfeasor. All three criteria for res judicata--the parties, the causes, and the thing demanded--were held different between the two lawsuits, and it was noted that Louisiana's workers compensation law specifically preserves a claimant's right to pursue a third-party damage action in addition to his statutory remedy. 524 So.2d 99. Here, by contrast, the district court held that Louisiana jurisprudence firmly establishes that an LCSC decision is accorded res judicata effect after the time for appeal has expired.[2] Further, in Foreman v. Falgout, 503 So.2d 517 (La.App. 1st Cir.1986), the state court held that LCSC has exclusive jurisdiction over disputes involving removal and discipline of state employees, thus preempting a state tort action against his supervisors. The distinction, for res judicata purposes, between Foreman and this case eludes me. Consequently, I am dubious of today's ruling on Louisiana claim preclusion law.
 
 
 
 [1]
 The LCSC opinion does not include the word "not;" however, a review of the entire opinion indicates that the omission of "not" in this sentence was an error
 
 
 [2]
 State rules of issue preclusion may bar relitigation of issues in federal court that were previously litigated in state administrative proceedings
 
 
 [1]
 There is no question but that federal law applies in this Sec. 1983 action. The only question is whether the federal common law compels the adoption of an independent federal rule of preclusion or whether it compels the application of a state rule of preclusion
 
 
 [2]
 The cases it cites, admittedly, generally deal with the Commission's exclusive jurisdiction to award equitable relief to the complaining civil servant. See, e.g., Thomas v. Dept. of Corrections, 430 So.2d 1153, 1155 (La.App. 1st Cir.), writ denied, 438 So.2d 566 (La.1983); Raborn v. La. Health & Hum. Res. Admin., 349 So.2d 903, 904 (La.App. 1st Cir.), writ granted, 351 So.2d 175 (La.1977)