**David PRAGER, III, Plaintiff,**

v.

**John D. LaFAVER, Secretary of the Kansas Department of Revenue, in His Personal Capacity, Defendant.**

**Civil Action No. 97–4216–DES.**

United States District Court,
D. Kansas.

April 10, 1998.

Louis F. Eisenbarth, Alan V. Johnson, Myron L. Listrom, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, for Plaintiff.

Thomas V. Murray, Barber, Emerson, Springer, Zinn & Murray, L.C., Lawrence, KS, for Defendant.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

## I. INTRODUCTION

David Prager, III, a former tax attorney for the Kansas Department of Revenue, brings this 42 U.S.C. § 1983 action seeking damages for the alleged deprivation of his First Amendment free speech rights and Fourteenth Amendment liberty interest.

This matter is before the court on defendant's motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss (Doc. 5). In his opposing memorandum, plaintiff suggests that since resolution of the motion requires consider-

ation of matters outside the pleadings, it should be treated as a motion for summary judgment pursuant to Fed.R.Civ.P. 56. The record, however, is insufficiently developed for the court to treat defendant's motion as one for summary judgment since neither party has complied with the requirements of Fed.R.Civ.P. 56 and D.Kan. Rule 56.1. To conclude otherwise would result in a potentially unjust and unfair resolution of this matter. Accordingly, the court shall exclude matters outside the pleadings and treat defendant's motion as a motion to dismiss.

The court has considered the briefs of counsel, plaintiff's factual allegations and applicable law, and determines that oral arguments-would not materially assist the court in its decision.

## II. RULE 12(B)(6) MOTION TO DISMISS STANDARD

The court may not dismiss a cause of action for failure to state a claim under Rule 12(b)(6) unless it appears beyond doubt that the claimant can prove no set of facts supporting its claim which would entitle it to relief. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). In considering a Rule 12(b)(6) motion, the court must assume as true all well-pleaded facts, as distinguished from conclusory allegations, and must draw all reasonable inferences in favor of the non-movant. *Housing Auth. of the Kaw Tribe v. City of Ponca City,* 952 F.2d 1183, 1187 (10th Cir .1991); *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support its claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## III. SUMMARY OF PLAINTIFF'S FACTUAL ALLEGATIONS

The pertinent allegations in plaintiff's amended complaint, which the court accepts as true, are summarized as follows:

Mr. Prager had been an Attorney III, classified civil service employee with permanent status with the Kansas Department of Revenue since 1988. On October 31, 1996, Mr. Prager delivered a memo to his supervisor, Richard Oxandale, General Counsel for the Department of Revenue. This memo pertained to a corporate income tax appeal ("Tax Appeal A") for which Mr. Prager was responsible. The memo stated that the tax laws had been misinterpreted by Mr. Oxandale and Secretary LaFaver in another tax appeal ("Tax Appeal B"), which was being handled by another attorney in the Department of Revenue. Both Tax Appeal A and Tax Appeal B involved the same issue, namely, whether a federal agreement to extend the federal assessment limitation period extends the time period for a Kansas refund claim under Kan.Stat.Ann. § 79–3230(e).

In his memo of October 31, 1996, Mr. Prager informed Mr. Oxandale that little or no legal research had been done in arriving at the erroneous interpretation of Kan.Stat. Ann. § 79–3230(e) in Tax Appeal B, resulting in an illegal tax refund of $1.0 million to Taxpayer B. Mr. Prager's memo provided three pages of legal analysis, explaining why Kan.Stat.Ann. § 79–3230(e) had been erroneously interpreted by Mr. Oxandale and Secretary Lafaver in Tax Appeal B. Mr. Prager's memo went on to request a meeting with Mr. Oxandale and Secretary LaFaver to discuss their erroneous interpretation of Kan. Stat.Ann. § 79–3230(e) in Tax Appeal B, and to determine that the law should be properly followed in Tax Appeal A. Mr. Oxandale never arranged such a meeting.

On December 18, 1996, Mr. Prager sent a twelve-page letter to Kansas Governor Bill Graves, which included a number of lengthy attachments. The letter to Governor Graves addressed several issues which Mr. Prager alleges were of public concern. One of those issues was a well-publicized income tax controversy involving La Siesta Foods, Inc. Mr. Prager asserted that the tax abatement in the La Siesta case was illegal and that Secretary LaFaver was the one who had agreed to and caused the illegal La Siesta abatement. Mr. Prager also asserted that the Kansas Department of Revenue's administrative process had been circumvented by politics. Finally, Mr. Prager expressed his concern over

taxpayers' perception of unfair treatment by the Kansas Department of Revenue.

On January 8, 1997, Secretary LaFaver sent a letter to Mr. Prager, suspending Mr. Prager from his employment with pay pursuant to Kan.Admin.Regs. 1–10–7. In the first sentence of this letter, the Secretary stated, "I am in receipt of your unfortunate correspondence to the Governor regarding an array of tax issues at the Department of Revenue." Referring to Mr. Prager's letter to the Governor, the Secretary went on to say, "You have imagined events that did not occur, and you have characterized actions of the Governor and me that I took with full legal advice as 'illegal.'" The Secretary's letter further stated:

> That you chose to send such a letter to the Governor without discussing it with the General Counsel or me reflects poorly upon your judgment and your willingness and ability to work as a member of this team. Clearly the letter requires a thorough review of matters alluded to in the letter as well as other matters relating to the fairness and propriety of actions the department has taken in corporate tax litigation.

On February 6, 1997, Mr. Prager filed a timely appeal with the Kansas Civil Service Board, contending that his suspension by Secretary LaFaver was contrary to Kan.Stat. Ann. § 75–2973, the Kansas "whistle-blower" statute. Specifically, Mr. Prager contended that his suspension was in retaliation for his reporting to Mr. Oxandale and Governor Graves that Secretary LaFaver had violated the tax laws in regard to the La Siesta tax case.

On March 17, 1997, Mr. Prager sent another letter to Governor Graves, expressing Mr. Prager's concerns about a possible illegal tax refund in Tax Appeal A. This same issue had also been the subject of Mr. Prager's earlier memo of October 31, 1996, to Mr. Oxandale. The March 17 letter to Governor Graves stated in part:

> I am writing to inform you that in a currently pending corporate income tax administrative appeal ("Appeal A") it is apparent that Secretary LaFaver or Richard Oxandale, or both, intend to act so as to

violate the law or violate their legal obligation to the State. The anticipated violation is likely to result in substantial injury to the State through the payment of an illegal refund, which could exceed $1.0 million in Appeal A.

.    .    .    .    .

> In providing professional, legal representation in the course of my employment with the State of Kansas, the State of Kansas has always been and is my client. While Secretary LaFaver and Mr. Oxandale may have their own opinions regarding the La Siesta appeal, Appeal A and B or other tax appeals, it is my duty to differ with their opinions when they cause the tax laws to be violated. Please act to prevent Secretary LaFaver and Mr. Oxandale from causing an illegal refund to be issued in Appeal A.

Mr. Prager sent copies of his March 17 letter to both Secretary LaFaver and Mr. Oxandale.

On May 9, 1997, Secretary LaFaver sent an eleven-page letter to Mr. Prager, advising Mr. Prager that he would be terminated from his employment with the Department of Revenue effective May 16, 1997. In the first paragraph of this letter, the Secretary summarized his reasons for discharging Mr. Prager, saying:

> It is my belief that your actions as an attorney with this Department have evinced an overall lack of judgment, insubordination, violation of confidentiality in revealing private tax matters and matters concerning our former attorney-client relationship, acting contrary to the interests of your client and exhibiting personal conduct detrimental to the state service which has caused undue disruption of the normal operation and proper functioning of this Department, all and each of which constitutes gross misconduct on your part, and conduct grossly unbecoming an attorney with this Department.

On June 6, 1997, Mr. Prager filed a timely consolidated appeal with the Civil Service Board, contending that his suspension and termination from employment were unreasonable and in violation of Kan.Stat.Ann.

§ 75–2973. Mr. Prager's appeal to the Civil Service Board is still pending.

On June 12, 1997, an article on Mr. Prager's appeal of his termination from employment was published in *The Topeka Capital–Journal*. The article in *The Topeka Capital–Journal* quoted several passages from Secretary LaFaver's termination letter of May 9, 1997, to Mr. Prager, including the following:

'Pursuant to my review of allegations made in your December 18, 1996, letter and memorandum, it has now become apparent to me that you have in fact engaged in a pattern of abusive and at times ruthless tactics in dealing with taxpayers and their representatives, and that this has been occurring for years.

.    .    .    .    .

'These allegations of yours [concerning the La Siesta case] are obviously based on mere surmise and fantasy derived from newspaper articles. As such, your conduct was not only reckless and unethical, but constitutes gross misconduct.'

## IV.  DISCUSSION

■ Defendant advances the affirmative defense of qualified immunity as a ground for dismissal of plaintiff's claims. The defense of qualified immunity represents an "attempt to balance the need to preserve an avenue for vindication of constitutional rights with the desire to shield public officials from undue interference in the performance of their duties as a result of baseless claims." *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir.1988). An assertion of qualified immunity requires evaluation under the standard articulated by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In *Harlow*, the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. 2727.

■ Once a defendant to a 42 U.S.C. § 1983 action raises a qualified immunity defense, the burden shifts to the plaintiff to show both facts and law to establish that the defendant is not entitled to a qualified immunity. *Dixon v. Richer*, 922 F.2d 1456, 1460 (10th Cir.1991). The plaintiff must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred." *Pueblo Neighborhood*, 847 F.2d at 646. If the plaintiff meets this burden, then the normal burden of the movant for a motion to dismiss falls again upon the defendant. *See id.* In the context of a qualified immunity defense, the Tenth Circuit has traditionally required plaintiffs to meet a heightened pleading standard. *See Sawyer v. County of Creek*, 908 F.2d 663, 667 (10th Cir.1990).

■ If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to immunity from suit and other demands of litigation. *Siegert v. Gilley*, 500 U.S. 226, 232–33, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir.1992). On the other hand, if the plaintiff successfully meets his initial burden as a matter of law, he may be entitled to discovery on the immunity question before a motion for summary judgment on qualified immunity grounds can be resolved. *Anderson v. Creighton*, 483 U.S. 635, 646–47 n. 6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Workman*, 958 F.2d at 336. The question of whether the defendant is entitled to qualified immunity is a legal one and the court cannot avoid the question by framing it as a factual issue. *Pueblo Neighborhood*, 847 F.2d at 645–46.

Following the *Harlow* analysis on qualified immunity, there is no dispute that as to the first prong the defendant was a "government official performing a discretionary function." *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727. The inquiry thus turns to the second *Harlow* prong—whether the defendant violated "clearly established statutory or constitutional rights of which a reasonable person would have known...." *Id.* Therefore, the issue before the court is (1) whether plaintiff has alleged a deprivation of federal rights sufficient to state a claim under 42 U.S.C. § 1983

and, if so, (2) whether those rights were clearly established at the time of the deprivation.

## A. Plaintiff's Free Speech Claim

█ "It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). The threshold inquiry in determining if the employee had of a constitutionally protected interest in free speech is whether the "employee's speech touches upon a matter of public concern." *Melton v. City of Oklahoma City*, 879 F.2d 706, 713 (10th Cir.1989), modified on other grounds, 928 F.2d 920 (10th Cir.) (en banc), *cert. denied*, 502 U.S. 906, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991) (citing *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). Plaintiff alleges that his speech involved allegations of wrongdoing, inefficiency or other malfeasance on the part of certain government officials in the conduct of their public duties. Specifically, plaintiff claims his speech included allegations that: (1) officials in the Kansas Department of Revenue misinterpreted tax laws resulting in a potential illegal refund of one million dollars; (2) the Department of Revenue's administrative process was susceptible to circumvention by undue political influence; and (3) many taxpayers had a perception of unfair treatment by the Department of Revenue. Plaintiff's allegations of wrongdoing, inefficiency or other malfeasance, because they sought "to bring to light actual or potential wrongdoing or breach of public trust" on the part of defendants, *Connick*, 461 U.S. at 148, 103 S.Ct. 1684, clearly concern matters of public interest. Plaintiff's "expression of potential wrongdoing did not address internal policies relevant only to department personnel nor involve essentially a private matter, but concerned information in which the public would definitely be interested." *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir.1988). Accordingly, the court concludes that plaintiff is properly characterized as a "whistle-blower" based on the allegations in the complaint. Defendant's argument that plaintiff's speech resulted from purely private concerns is ineffectual at this stage of the litigation and is more appropriately raised in a motion for summary judgment.

Since plaintiff's speech touched on a matter of public concern, the court must next balance "the interests of the employee in making the statement against the public employer's interest in the effective and efficient fulfillment of its responsibilities to the public." *Melton*, 879 F.2d at 713 (quoting *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). To justify restricting plaintiff's speech, defendant must show actual disruption of services resulting from plaintiff's speech and that the disruption outweighs the plaintiff's First Amendment rights. *Ramirez v. Oklahoma Dept. of Mental Health*, 41 F.3d 584, 594 (10th Cir.1994). employees. In *Rankin v. McPherson*, the Court stated:

> In performing the balancing, the statement will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose. [citations omitted]. We have previously recognized as pertinent considerations whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.

483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315. Essentially, the focus is "on the effective functioning of the public employer's enterprise. Interference with work, personnel relationships, or the speaker's job performance can detract from the public employer's function; avoiding such interference can be a strong state interest." *Id.*

Although defendant undoubtedly has a legitimate concern about the disruption caused by plaintiff's allegations, "it would be absurd to hold that the First Amendment generally authorizes [culpable] officials to punish subordinates who blow the whistle simply because the speech somewhat disrupted the

office." Ramirez, 41 F.3d at 594 (quoting Frazier v. King, 873 F.2d 820, 826 (5th Cir. 1989)). The court is not convinced that at this stage of the proceedings, defendant has demonstrated that the state interest in the "efficiency of office", outweighs plaintiff's strong First Amendment interest in reporting possible official misconduct. Defendant's arguments to the contrary involve unsupported factual allegations and are not properly addressed at this stage of the proceedings.

The court now must consider whether the complaint sufficiently alleges that the protected speech was a "motivating factor" in defendant's detrimental employment decision. Melton, 879 F.2d 713 (quoting Mt. Healthy City School Dist. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). A claim of retaliation may be established by "the only means available ... circumstantial evidence." Smith v. Maschner, 899 F.2d 940, 949 (10th Cir.1990). Here the complaint clearly pointed to such circumstantial evidence. Plaintiff alleges that the first adverse actions against him, suspension without pay, was instituted within one month after his first letter to the governor. Plaintiff also alleges that he was terminated from employment within two months of his second letter to the governor. In view of these and other allegations made in the complaint, the actions taken against plaintiff could reasonably support an inference of an unlawful retaliatory action.

■ Based on the allegations contained in the complaint, the court finds that plaintiff has sufficiently alleged the deprivation of a free speech interest to state a claim under 42 U.S.C. § 1983. The court now turns to the question of whether the law was clearly established at the time of the events in question. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Although it is not necessary that the alleged violation has been previously held unlawful, "in the light of pre-existing law the unlawfulness must be apparent." Id. Generally, the law may be considered as clearly established if there exists a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts found the law to be as the plaintiff maintains. Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir.1992), citing Stewart v. Donges, 915 F.2d 572, 582–83 & n. 14 (10th Cir.1990). In deciding whether the law that the defendant allegedly violated was clearly established, the court must examine the law as it was at the time of the defendant's actions. Wolfenbarger v. Williams, 826 F.2d 930, 932 (10th Cir.1987).

■ Defendant argues that there are no analogous Supreme Court or Tenth Circuit cases such that the law was clearly established with respect to the conduct in question here. Defendant further implies that existing authority is inapplicable in light of the Kansas whistle-blower statute, Kan.Stat.Ann. § 75–2973(c)(4), which specifically authorizes disciplinary action against an employee for confidential disclosures. This argument, however, turns on several factual assumptions, including defendant's assertion that plaintiff's speech disclosed confidential taxpayer information. As such, it is more appropriately raised in a motion for summary judgment. Defendant's argument, moreover, relies on an excessively narrow view of the requirement of analogous precedent. While it is true that the law must be clearly established in a "particularized" sense, this particularity requirement does not mean that the very action in question has been held unlawful. Instead, it only requires that "in the light of pre-existing law the unlawfulness must be apparent." Anderson, 483 U.S. at 640, 107 S.Ct. 3034.

The law in a general sense was clearly established at the time of the events in question here. See, e.g., Rankin v. McPherson, 483 U.S. at 383, 107 S.Ct. 2891; Arnold v. Oklahoma County Bd. of County Com'rs, 77 F.3d 492 (10th Cir.1996). Accordingly, the issue is whether defendant should reasonably have been on notice that plaintiff's speech in particular was protected and he could not prevail in the Pickering balancing of interests. See Powell v. Gallentine, 992 F.2d 1088, 1090 (10th Cir.1993). Based on the allegations stated in the complaint, and the

law of the Tenth Circuit, the court finds that defendant should reasonably have been on notice that plaintiff's speech was protected and that plaintiff's free speech interests could outweigh the state's interest in "efficiency of office."

## B. Plaintiff's Liberty Interest Claim

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). *See Workman,* 32 F.3d at 475. "Once a liberty interest is implicated, the due process protections of the Fourteenth Amendment are activated and plaintiff[ ] must show that [he was] not afforded an adequate hearing." *Jensen v. Redevelopment Agency of Sandy City,* 998 F.2d 1550, 1558 (10th Cir.1993) (citing *Board of Regents v. Roth,* 408 U.S. 564, 577, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Therefore, plaintiff must first show a liberty interest exists and then that the liberty interest was infringed upon.

■ The law is clear that plaintiff "has a liberty interest in his good name and reputation as it affects his protected property interest in continued employment." *Workman,* 32 F.3d at 480 (citing *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *McGhee v. Draper,* 639 F.2d 639, 643 (10th Cir.1981)). However, plaintiff must show how the government infringed upon this liberty interest. To do so, plaintiff must allege: (1) statements by a government actor which impugn his good name, reputation, honor, or integrity; (2) the falsity of such statements; (3) the occurrence of such statements in the course of termination, or the foreclosure of other employment opportunities by such statements; and (4) the publication of such statements. *Workman,* 32 F.3d at 480 (citations omitted).

■ Based on the allegations contained in the complaint, the court finds that plaintiff has sufficiently alleged the deprivation of a liberty interest. Defendant argues, however, that plaintiff offers no evidence that defendant was the one who published the stigmatizing statement, and thus failed to establish all the elements of his liberty claim. This argument is evidentiary in nature and therefore inappropriate at this stage of the proceedings. Defendant also argues that the statements in defendant's letter of termination were not of the type to impugn plaintiff's good name, reputation, honor, or integrity. The court disagrees. Accusations of reckless and unethical behavior are clearly the type of statements recognized by the law as stigmatizing. *See, e.g., Roth,* 408 U.S. at 572–3, 92 S.Ct. 2701.

Having sufficiently alleged the deprivation of a liberty interest, plaintiff must also allege that he was deprived of an adequate name-clearing hearing to state a claim under 42 U.S.C. § 1983. *Wisconsin v. Constantineau,* 400 U.S. at 437, 91 S.Ct. 507; *Workman,* 32 F.3d at 480 ("Once a liberty interest is implicated, the due process protections of the Fourteenth Amendment are innervated and [the plaintiff] must show he was not afforded an adequate name-clearing hearing"). This, however, plaintiff has not done. Accordingly, plaintiff's 42 U.S.C. § 1983 claim for liberty deprivation must be dismissed.

## C. Conclusion

The court finds that the complaint in this case properly states a claim under 42 U.S.C. § 1983 for deprivation of plaintiff's free speech interest, and that it is premature, in the absence of a more complete factual record, to grant qualified immunity to this claim on the basis of the pleadings. Defendant, however, retains the right to assert the qualified immunity defense throughout the proceedings, as the facts develop more fully. *See Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1487 (11th Cir.1992) (rejecting the qualified immunity defense at the motion to dismiss stage, but emphasizing defendants' right to assert the qualified immunity defense in subsequent proceedings). The court also finds that plaintiff fails to state a claim under 42 U.S.C. § 1983 for deprivation of liberty. However, since the court cannot determine for certain whether plaintiff can cure the pleading deficiencies, plaintiff will be granted leave to file an amended complaint as to his deprivation of liberty claim.

IT IS THEREFORE BY THE COURT ORDERED that defendant's motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss (Doc. 5) is denied in part and granted in part. Defendant's motion is denied with respect to plaintiff's deprivation of free speech claim and is granted with respect to plaintiff's deprivation of liberty claim.

IT IS FURTHER ORDERED that plaintiff is granted leave to file an amended complaint to cure the deficiencies noted above within forty-five days of this order.